UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00178-GNS

AMENA LEBLANC, et al.                                                                    PLANTIFFS

v.

ALEDA HAGAN, et al.                                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants' Motions to Dismiss (DN 8, 9, 12, 15, 17, 18) and Plaintiffs' Motions for Summary Judgment (DN 21, 27).[1] For the reasons stated below, the Court **GRANTS** Defendants' motions and **DENIES AS MOOT** Plaintiffs' motions.

### I.     BACKGROUND

This is a pro se civil rights case filed by Amena LeBlanc ("LeBlanc") on behalf of herself and her minor children, M.S. and D.L., and by LeBlanc's boyfriend, Roy J. Majors ("Majors").[2] Plaintiffs assert claims under 42 U.S.C. § 1983, and 18 U.S.C. §§ 241 and 242 alleging Defendants conspired to violate their constitutional rights when an investigation into dependency, abuse, and neglect allegations led to the removal of the children from LeBlanc's custody. (Am. Compl., DN 11). Plaintiffs have brought suit against various government organizations and employees for their role in the investigation, court proceedings, or removal of the children. Defendants include: Kentucky Cabinet for Family and Health Services ("CHFS")

---

[1] Plaintiffs filed two identical summary judgment motions; however, only one contained a certificate of service.

[2] It is not clear from the pleadings why Majors believes he has standing to bring this action. He is neither the father of LeBlanc's children nor was he a party to the underlying juvenile court cases.

1

and its employees Cindy Branstetter ("Branstetter") and Aleda Hagan ("Hagan"); the Warren County Sheriff's Office ("WCSO"); Assistant Warren County Attorney Leslie Bucklew; Warren County Family Court Judge Catherine Holderfield; the Montgomery County (Tennessee) Sheriff's Office ("MCSO"); and the Tennessee Department of Children Services ("DCS"). Plaintiffs seek $500 million dollars and "an injunction on all rulings made by Hon. Catherine Holderfield regarding Plaintiff Amena LeBlanc's Warren County family court case." (Am. Compl. ¶¶ 110-11).

Defendants (excluding MCSO, and Branstetter and Hagan in their individual capacities) each filed a Motion to Dismiss. Plaintiffs filed Motions for Summary Judgment against MCSO for failure to answer. Plaintiffs also seek summary judgment against Branstetter, Hagan, and Bucklew for failure to answer in their individual capacities. These matters are ripe for decision.

## II. STANDARD OF REVIEW

A defendant may, before pleading, move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). There are two categories of motions to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1): facial attacks and factual attacks. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the court's subject matter jurisdiction based upon the sufficiency of the pleadings. In considering a facial attack, a court will consider the material allegations of fact set forth in the complaint as being true and construe them in a light most favorable to the nonmoving party. *See id*. A factual attack challenges the court's subject matter jurisdiction based upon the facts as alleged in the pleadings; instead of presuming the allegations of fact in the complaint to be true the court will weigh the conflicting evidence to determine whether proper jurisdiction exists. *See id*.

In most circumstances, a plaintiff bears the burden to survive Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See Bell v. Hood*, 327 U.S. 678, 682 (1946). Indeed, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). With that being said, *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). The Court need not, however, abrogate the basic pleading standards of a motion to dismiss when considering a pro se pleading. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P 12(b)(6). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

### A. Defendants' Motions to Dismiss

#### 1. *Subject Matter Jurisdiction*

Defendants move to dismiss for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, the domestic relations exception to federal jurisdiction, and the *Younger* abstention doctrine.

Plaintiffs' request for this Court to issue "an injunction on all rulings made by Hon. Catherine Holderfield regarding Plaintiff Amena LeBlanc's Warren County family court case" is barred by the *Rooker-Feldman* doctrine. (Am. Comp. 36). Under this doctrine, "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings." *Pieper v. Am. Arbitration Ass'n*, 336 F.3d 458, 460 (6th Cir. 2003) (internal quotation omitted) (citation omitted). Only the United States Supreme Court has jurisdiction to review state court judgments. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923). Thus, the *Rooker-Feldman* doctrine acts as a limitation on federal courts' jurisdiction, "if the constitutional claims presented to a United States district court are "inextricably intertwined" with the state court's ruling. *Feldman*, 460 U.S. at 482 n.16.

To determine whether a claim is inextricably intertwined, "the federal court must analyze whether the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *In re Singleton*, 230 B.R. 533, 536-37 (B.A.P. 6th Cir. 1999) (internal quotation marks omitted) (quoting *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997)). In a similar case, this Court concluded that a family's request to enjoin a family court's decision to remove two children was barred by the *Rooker-Feldman* doctrine. *Evans v. Downey*, No. 1:15-CV-00117-GNS, 2016 U.S. Dist. LEXIS 82237, at *3 (W.D. Ky. June 23,

2016). Here, Plaintiffs' request for this Court to issue injunctive relief would be equivalent to overturning the state court's decision. Plaintiffs' claims for injunctive relief are therefore denied.

This Court also lacks subject matter jurisdiction due to the domestic relations exception to federal jurisdiction. *See Evans*, 2016 U.S. Dist. LEXIS 82237, at *4. "Generally, federal courts have no jurisdiction over domestic relations matters. Rather, state courts have exclusive jurisdiction over these matters." *Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2003) (citing *Ankenbrandt v. Richards*, 54 U.S. 689, 703-04 (1992)). "Although this domestic relations exception to federal jurisdiction does not apply to a civil action that merely has domestic relations overtones, federal courts lack jurisdiction where the action is a mere pretense and the suit is actually concerned with domestic relation issues." *Id.* (internal citations omitted). In other words, just because a plaintiff "styles his claim as a civil rights violation [it] does not change this calculus." *See Rigney v. Hesen*, No. 3:12-CV-541-R, 2013 U.S. Dist. LEXIS 96110, at *14 (W.D. Ky. July 9, 2013) (citation omitted). In determining whether the domestic relations exception applies, "we must focus on the remedy that the plaintiff seeks: Does the plaintiff seek an issuance or modification or enforcement of a divorce, alimony, or child-custody decrees?" *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 797 (6th Cir. 2015) (citation omitted). In this case, Plaintiffs seek a modification of a child custody decree, which is unquestionably a domestic relations determination. Thus, Plaintiffs' claims are barred by the domestic relations exception.

Plaintiffs' claims must also be dismissed for lack of subject matter jurisdiction pursuant to the *Younger* abstention doctrine. "*Younger* abstention requires federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (citing *Younger v. Harris*, 401 U.S. 37, 40-41 (1971)). In *Fieger v. Cox*, 524 F.3d 770 (6th Cir. 2008), the court held:

> Three factors determine whether a federal court should abstain from interfering in a state court action: (1) whether the underlying proceedings constitute an ongoing judicial proceeding, (2) whether the proceedings implicate an important state interest, and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge.

*Id.* at 775 (citation omitted).

Just as in *Evans*, this Court must abstain pursuant to the *Younger* abstention doctrine. *See Evans*, 2016 U.S. Dist. LEXIS 82237, at *4. In regards to the first issue, Plaintiffs' state court case is pending before the Kentucky Court of Appeals. As to the second issue, "the Sixth Circuit has recognized that the realm of domestic relations is an important state interest." *Id.* (citing *Zak v. Pilla*, 698 F.2d 800, 801 (6th Cir. 1982)). Lastly, the birth mother may appeal Judge Holderfield's decision and has done so. KRS 22A.020. All three factors, therefore, weigh against the Plaintiffs which warrants dismissal under the *Younger* abstention doctrine.

### 2.  *Personal Jurisdiction*

Even if this Court were to have subject matter jurisdiction, the Court would lack personal jurisdiction over DCS. KRS 454.210, Kentucky's long-arm statute, sets forth nine instances of conduct which permit Kentucky courts to exercise personal jurisdiction over non-resident defendants. Any person whose activities fall outside these categories cannot be subjected to long-arm jurisdiction in Kentucky. *See Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011). Applying long-arm jurisdiction consists of a two-step process:

> First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam* jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id.* at 57.

DCS's alleged constitutional violations occurred when it removed D.L. from his grandmother's home in Clarksville, Tennessee. This claim could only reasonably fall under the subsection of Kentucky's long-arm statute which provides:

> A [Kentucky] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's . . . [c]ausing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth . . . .

KRS 454.210(2)(a)(4).

DCS is a Tennessee state agency whose activities are limited to the State of Tennessee. *See* Tenn. Code. Ann. § 37-5-102(a). There is no evidence indicating that it "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth . . . ." KRS 454.210(2)(a)(4). Further, the actions allegedly taken by DCS consist of removing D.L. from a residence in Tennessee. Under these circumstances, this Court lacks personal jurisdiction over DCS, and the claims against DCS must be dismissed.

### 3. *Service of Process*

Even if this Court were to have jurisdiction over Defendants, Plaintiffs claims must be dismissed for failure to perfect service. Rule 12(b)(5) permits the dismissal of a complaint when a Plaintiff fails to provide sufficient service of process. Fed. R. Civ. P. 12(b)(5). Federal Rules of Civil Procedure require that "[a] state, municipal corporation, or any other state created government organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the

7

manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Plaintiffs failed to serve DCS and WCSO under either method.

When serving DCS, an agency of Tennessee, Plaintiffs neither served the Governor of Tennessee nor did they serve a copy of the summons and complaint in the manner prescribed by state law. Tennessee law requires service "[u]pon the state of Tennessee or an agency thereof, by delivering a copy of the summons and of the complaint to the attorney general of the state or to any assistant attorney general." Tenn. R. Civ. P. 4.04(6). Although the docket indicates that Plaintiffs issued a summons to DCS, they did not actually serve the Tennessee Attorney General.

Plaintiffs have also failed to properly serve WCSO as prescribed in the Federal Rule of Civil Procedure 4(j)(2). WCSO is an agency of Warren County; therefore, Kentucky law requires that "[s]ervice shall be made upon a county by serving the county judge or, if he is absent from the county, the county attorney." Ky. CR 4.04(7). Here, Plaintiffs merely mailed the summons and Complaint to the County Attorney's office, but did not serve the county judge or show that the judge was absent.

Next, Plaintiffs improperly served Judge Holderfield, Bucklew, Hagan, and Branstetter in their individual capacities. Kentucky law provides:

> Service shall be made upon an individual within this Commonwealth…by delivering a copy of the summons and of the complaint (or other initiating document) to him personally or, if acceptance is refused by offering personal delivery to such person, or by delivering a copy of the summons and of the complaint (or other initiating document) to an agent authorized by appointment or by law to receive service of process for such an individual.

Ky. CR 4.04(2). Plaintiffs neither served these individual Defendants personally, nor did an authorized person accept service on their behalf. Instead, the summonses and complaints were

mailed to their offices. Therefore, Plaintiffs have failed to properly serve these Defendants in accordance to the rules of civil procedure.

### 4. *Immunity*

In addition to this Court's lack of jurisdiction and Plaintiffs' failure to properly serve Defendants, Plaintiffs have brought suit against multiple parties who are immune from liability in this case. Specially, Judge Holderfield, Bucklew, and CHFS and its social workers are immune from suit.

First, the Eleventh Amendment bars Plaintiffs' claims against Judge Holderfield in her official capacity, and absolute judicial immunity bars claims against her individually. *Bennett v. Thorburn*, 843 F.2d 1390, 1988 WL 27524, at *1 (6th Cir. 1988). "State judges enjoy absolute immunity from liability under 42 U.S.C. § 1983." *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012) (citation omitted). Absolute immunity may be defeated in two instances: "[f]irst, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (internal quotation marks omitted) (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)). The alleged constitutional violations stem from actions taken by Judge Holderfield as a family court judge; therefore, the first exception does apply because clearly Judge Holderfield was acting in her judicial capacity. Second, Judge Holderfield's decisions were made in a custody removal case, which is the exact kind of case to be heard in Family Court. Thus, neither exception to judicial immunity applies and Judge Holderfield is immune from suit.

Plaintiffs have brought suit against Bucklew as an Assistant Warren County Attorney. These claims are also barred by immunity. "State prosecutors are absolutely immune from civil

liability when acting within the scope of their prosecutorial duties." *Evans v. Downey*, No. 1:15-CV-00117-GNS, 2016 U.S. Dist. LEXIS 82237, at *6 (citing *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976)). Specifically, the Supreme Court in *Imbler v. Pachtman* held "that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler*, 424 U.S. at 431. A functional approach is used to determine whether a prosecutor is acting within the scope of his duties. *See Burns v. Reed*, 500 U.S. 478, 491 (1991). In *Burns*, the Supreme Court concluded that absolute prosecutorial immunity is justified "only for actions that are connected with the prosecutor's role in judicial proceedings, not every litigation-inducing conduct." *Id*. at 494. Thus:

> [A]bsolute prosecutorial immunity protects only those acts falling within a prosecutor's role as advocate for the state and intimately associated with the judicial process and not for administrative or investigative acts antecedent or extraneous to the judicial process. Investigative acts undertaken in direct preparation of judicial proceedings, including the professional evaluation of evidence, warrant absolute immunity, whereas other acts, such as the preliminary gathering of evidence that may ripen into a prosecution are too attenuated to the judicial process to afford absolute protection.

*Ireland v. Tunis*, 113 F.3d 1435, 1445 (6th Cir. 1997) (citing *Buckley v Fitzsimmons*, 509 U.S. 259, 273 (1993)).

Bucklew's alleged constitutional violations relate to his search of county and state records to see if LeBlanc had any outstanding arrest warrants. Plaintiffs argue that these actions are outside the scope of his prosecutorial duties because the records search was not relevant to the determination of abuse and neglect. To the contrary, research into the criminal history of the litigants in family courts is clearly relevant to an evaluation of the charges. Plaintiffs also argue that Bucklew is not entitled to absolute immunity because he was acting as an investigator as opposed to a prosecutor. As previously stated, "investigative acts undertaken in direct preparation of judicial proceeding . . . warrant absolute immunity . . . ." *Id.* However, in the

10

event that the state prosecutor is not entitled to absolute immunity, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Burns*, 500 U.S at 495. Here, there is no indication of either incompetence or intentional legal violations; therefore, Bucklew is immune from suit.

Plaintiffs also allege constitutional violations against CHFS and its social workers in their official and individual capacities. The Eleventh Amendment bars Plaintiffs' claims against CHFS. As this Court has previously held:

> Under the Eleventh Amendment to the United States Constitution, a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has expressly abrogated states' immunity. CHFS is an arm of the state. The Commonwealth of Kentucky has not waived its immunity, and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. Therefore, Plaintiffs claims against CHFS cannot proceed. Moreover, CHFS is not a person subject to suit under § 1983.

*Fleet v. Commonwealth Cabinet for Health & Family Servs.*, No. 3:15-CV-00476-JHM, 2016 U.S. Dist. LEXIS 40165, at *8 (W.D. Ky. Mar. 25, 2016) (citations omitted) (internal quotations omitted). Since CHFS is immune, any claims against its employees in their official capacity are also barred because "although officials literally are persons, an official capacity suit is a suit against the official's office and thus against the state itself." *Evans*, 2016 U.S. Dist. LEXIS 82237, at *4 (internal quotation marks omitted) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). While Hagan and Brantsetter, who are social workers, are not yet before the court in their individual capacities, they are immune from personal liability.[3] "Employees of CHFS are still entitled to absolute immunity even in an individual capacity when performing tasks that are intimately associated with judicial proceedings determining child welfare." *Evans*, 2016 U.S.

---

[3] Although the Complaint purports to assert claims against Hagan and Branstetter in both their official and individual capacities, Plaintiffs have not properly served either Defendant in her individual capacity.

Dist. LEXIS 82237, at *3 (internal quotation marks omitted) (citation omitted). *See also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 726 (6th Cir. 2011). Hagan's investigation into the dependency, abuse, and neglect allegations, including her visit to the parent's home and testimony at trial, represent precisely the sort of conduct social workers are expected to perform in order to protect the health and well-being of children. Even if Hagan intentionally made misrepresentations in her report, she would still be entitled to absolute immunity. *Evans*, 2016 U.S. Dist. LEXIS 82237, at *3.

Lastly, DCS is also immune from suit under the Eleventh Amendment and sovereign immunity. As previously stated a state agency may not be sued in federal court, regardless of the relief sought, unless the state has waived its sovereign immunity or Congress has overridden it. *See Fleet*, No. 3:15-CV-00476-JHM, 2016 U.S. Dist. LEXIS 40165, at *8. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). "[S]ection 20-13-102(a) of the Tennessee Code, which expressly prohibits any suits in state court against the state or where state treasury funds are potentially involved, also extends impliedly to suits brought in federal court." *Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (citation omitted). Therefore, suits against DCS, an agency of the state of Tennessee, are barred by sovereign immunity. *See Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003) (finding that the "Tennessee Department of Children's Services . . . [is] the State" for sovereign immunity purposes (internal quotation marks omitted) (citation omitted)).

### 5. *Failure to State a Claim of a Violation of 18 U.S.C. §§ 241 or 242*

Plaintiffs have also asserted claims alleging violations of 18 U.S.C. §§ 241 and 242, which are penal statutes. Generally, there is no private right of action for violations of criminal statutes. *Am. Postal Workers Union v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973). "Equally important is the firmly established principle that criminal statutes can only be

enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions. *Id*. (internal quotation marks omitted) (quoting *Bass Angler Sportsman's Soc'y of Am. v. U.S. Steel*, 324 F. Supp. 412, 415 (M.D. Ala. 1971)). Specifically, the Sixth Circuit has concluded that private citizens may not recover under 18 U.S.C. §§ 241 and 242. *United States v. Oguaju*, 76 F. App'x 579, 580 (6th Cir. 2003); *Kafele v. Frank & Wooldridge Co.*, 108 F. App'x 307, 308 (6th Cir. 2004). Even if Plaintiffs were to bring their claim under the proper civil conspiracy statute, 42 U.S.C. § 1985, it would fail because Plaintiffs make no allegations "that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). For these reasons, Plaintiffs claims should be dismissed for failure to state a claim upon which relief can be granted.

### B. Plaintiffs' Motions for Summary Judgment

Finally, Plaintiffs have moved for summary judgment against MCSO, and Branstetter, Hagan and Bucklew, in their individual capacities for their failure to respond to the Complaint. Not only is the issue denied as moot, but this Court must deny Plaintiffs' motions because Defendants have not yet been properly served; therefore, this Court lacks personal jurisdiction over these Defendants. *See Miles v. Bottom*, No. 5:15-CV-126-JMH, 2015 U.S. Dist. LEXIS 145878, at *4-5 (E.D. Ky. Oct. 28, 2015) (federal courts cannot acquire personal jurisdiction over a defendant unless the defendant is properly served with process) (citing *Robertson v. R.R. Labor Bd.*, 268 U.S. 619, 622 (1925)). "Absent personal jurisdiction, the court cannot give the defendant the notice and an opportunity to be heard that due process requires, let alone grant summary judgment against them." *Id*. at *5. In order to properly serve MCSO, Tennessee law requires service "upon a county, by delivering a copy of the summons and of the complaint to the

chief executive officer of the county, or if absent from the county, to the county attorney if there is one designated." Tenn. R. Civ. P. 4.04(7). Plaintiffs simply mailed the summons and complaint to MCSO. As discussed above, Plaintiffs also failed to perfect service against Branstetter, Hagan, and Bucklew, in their individual capacities. Plaintiffs' motions for summary judgment must be denied.

## IV. CONCLUSION

For the foregoing reasons**, IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (DN 8, 9, 12, 15, 17, 18) are **GRANTED**, and Plaintiffs' Motions for Summary Judgment (DN 21, 27) are **DENIED AS MOOT**.

**Greg N. Stivers, Judge
United States District Court**
June 27, 2017

cc: counsel of record
Plaintiffs, *pro se*